We'll hear argument next in Case 18-459, Emulex Corporation v. Varjabedian. Mr. Garr. Thank you, Mr. Chief Justice, and may it please the Court. The Ninth Circuit in this case recognized an unprecedented, inferred private right to recover for negligent violations of Section 14e of the Securities Exchange Act of 1934. For two independent reasons, we would ask this Court to reverse that decision. First, as the government itself recognizes, this Court's precedents compel the conclusion that Section 14e does not confer any implied private right at all. Mr. Garr, why should we consider that when it wasn't raised in this case until what was the motion for rehearing in the Court of Appeals? You went through trial court, Court of Appeals, not a word. Everybody accepted there was a private right of action. And you are now making the nonexistence of a private right your principal argument. But as you well know, this is a court of review, not a first view. If we're going to take up that question, it shouldn't start here. Sure. Justice Ginsburg, I would point you first to this Court's decision in Central Bank of Denver, in which case this Court confronted the exact same situation, except we're actually in a much stronger position here. There, the petition for cert was on the question of whether or not the standard for an implied private right of action for aiding and abetting under Section 10 in Rule 10b-5 was recklessness or scienter. The cert petition didn't raise any question about whether there was an underlying implied private right for aiding and abetting. This Court itself raised and added that question. It granted certiorari and it resolved the case on that ground. Now, we are in a much stronger position than Central Bank because, first of all, it's undisputed that we raised this at the cert stage. The broader argument is fairly included within the question presented. Next, we did flag the argument below in our petition for rehearing. We specifically said on page 14 of our petition for rehearing, if Section 14e's implied right of action had to sweep in negligence, that would be grounds for eliminating it, not expanding it, and we cited the Ninth Circuit's decision explaining why there could be no private right of action under Section 17a. I'm sorry.  Kagan.     Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan.   Kagan. Kagan. Negligence standard, isn't it? No, I would disagree with that. It's a separate point flagging. We do make it on the next page as well, so there's two references. I agree. It's not a free-standing argument, but the point of this statement in our brief is, if you really could read Section 14e to encompass negligence, then you couldn't possibly have any private right of action. Everything comes crumbling down. And we don't want that. But I mean, I just want to add to it, Justice Kagan, you said you told the Ninth Circuit, I take it, quote, that your client did not dispute that Section 14e provides for a private right of action. That's correct. And we did that. And then later, you add this sentence as well, if we're wrong about negligence, then there wouldn't be a private right of action at all. I agree. That's what the sentence basically says, but go on with it. It's the same question. If I could address Justice Breyer's point just quickly, we did say at the panel stage that we did not dispute the existence of the private right, because, of course, we couldn't. The Ninth Circuit precedent had recognized that right. We did not, I think it's important to add, concede the existence of a private right. I think there's a difference between saying we don't dispute it and we agree with it. Now, I'm sorry, Justice Kagan. I think you – it's the same question. Right. And, of course, more broadly, under this Court's precedence, we would say clearly this Court has discretion to reach the broader issue. I mean, central bank really couldn't be more important. You answer discretion, but you don't answer why. Aren't we rewarding you? Rewarding you for not raising it adequately below, rewarding you for mentioning it in two sentences in your cert petition, and not asking us to take it as a separate question presented. Where should we draw the line as to when we stop rewarding counsel for changing or moving the ball on cert? Well, there was no strategic gamesmanship here, Justice Sotomayor. We – the broader argument, as even my friend concedes, is it fairly included within the question presented. If you look at page 20 of our cert petition, it was very explicitly raised. You're not dealing with what I just asked, which is? The broader issue is this Court should – You can take almost any question and throw the kitchen sink if you choose. The question is, you didn't raise it as a separate part of your cert petition. You didn't raise it below. Why should we reward you? Okay. First of all, we did argue it in our cert petition. But as to your broader question, Justice Sotomayor, you should do just as you did in the central bank case in order to provide for the intelligent resolution of this question. I wasn't here. I might have taken a different position. Well, and the dissenters obviously did. And the reason is, is because this is an issue that is interdependent with the question of whether or not there could be inferred private right of action for negligence. It would be silly for this Court to say there can be inferred right for negligence, but everybody would recognize, I think, that there is no – That's what the FCC's – that's what the government says, that there is. Well, the government says there's no private right of action at all. No, no, no, no. They say that the statute involves negligence. So we can find that it involves negligence and leave for another day whether there's a private cause of action or it only belongs to the SEC. I think where I would take issue with that, Justice Sotomayor, is the government – the first part of the government's brief, I understand, addressed the question of what would be the standard in an express action brought by the SEC. I don't really understand the government to be saying they think that in an implied private right of action, if it exists, you could have claims for negligence. They sort of artfully dodged that question and ultimately ground their brief on the broader position, which we very much agree with. They're literal. There's simply no private right of action at all. And so I think, you know, again, to answer your question, we would take issue with the notion that there was gamesmanship here. We were not required to raise it at the panel stage when we were bound by the Ninth Amendment. We did flag it in our petition for re-hearing. We very much – Ginsburg. If you had made it an explicit question, there's no circuit split on the question, is there? There's not, and nor was there in the Central Bank case. In that case, as Justice Stevens pointed out in his dissent, there were hundreds of judicial and administrative decisions recognizing an implied private right of action for aiding and abetting under Rule 10b-5. But this Court applied its precedents, including its more modern precedents, looked to the language of Section 10b, Rule 10b-5, and held that there could be no private right of action implied for aiding and abetting. And the same analysis here indisputably, I think, leads to the conclusion that there is no implied private right of action under Section E. My friends over here, I take page 44 of the brief as to not – as to concede that they cannot point to any rights-creating language in Section 14e, and that's because it's framed explicitly as a prohibition on conduct, not like Title IX, for example, something that is designed to address the benefited. That's true of 14a also. It is. And under 14a, there is a private right of action. Thanks to Borak. And Borak, as this Court pointed out in the Sandoval case emphatically, was a product of a different era that this Court has disavowed. Ginsburg. But even so, it's alive for under 14a. And is it rational to distinguish 14a from 14e for private right purposes? If you have 14a, the context of that is proxy statements? Yes, Your Honor. So proxy statements go one way, tender offers go the other? So we do think it's rational, Your Honor. First of all, 14e has language that could scarcely be more different than 14a. So you wouldn't look at the language of 14e and say, oh, they must have meant what Congress said in 14a. It's different. Second of all, the whole argument that because we've got an implied private right of action under 14a, we need to have one under 14e is exactly the argument that this Court rejected in Sandoval as to Borak, that there's a duty upon the courts to effectuate congressional purpose. Congress saw a gap with respect to statements in connection with tender offers in 1968. It filled that gap by adding additional disclosure requirements under section 14e for tender offers. If you want to look at the legislative history, Congress had in mind public enforcement of that provision. There's no basis for this Court to essentially do the deed again as it did in Borak to do it again here, simply because Borak reached that result on a completely different regime than this Court applies. But Sandoval, I think, makes clear, Mr. Garre, that we're not – I mean, the first question is, is there rights-creating language, but that beyond that, even if there's not rights-creating language, if there's legal context that indicates that Congress meant to create private rights of action, then we should take that legal context into account. And here it seems that there are at least two features of the legal context. One is the one that Justice Ginsburg said, which is this was meant to create a gap as to treating tender offers the same way as using proxy statements with respect to mergers, and Congress gave no indication that it wanted to treat those differently. Quite the opposite, that it was gap-filling and a way to unify the field. And the second is that Congress uses the 10b-5 language after every court has decided that 10b-5 creates a private right of action. And I think given those two things, Sandoval doesn't say throw out the statutory interpretation toolbox and just look to whether there's rights-creating language. It says be a sensible statutory interpreter, and a sensible statutory interpreter would consider both of those two things, wouldn't they? Garre, Not here, Your Honor, and I think what's missing from that summary, which I would agree with in some respects, is that Congress or this Court in Sandoval said context was relevant only insofar as it shed light on text. And so here I think the most important point as to that question is that the text  Sotomayor, I'm sorry. Don't we look to the text for what congressional intent is? And to the extent that that's the issue, what did Congress do? What did Congress intend with this language? Aren't all the facts that Justice Kagan put forth more meaningful in terms of Congress's intent? Because if Congress didn't agree with this, it had a whole lot of years to change things around, but it hasn't. Well, if that's where you're coming from, Justice Sotomayor, then you should agree with us that there's no implied private right of action for negligence, because the status quo was courts had an implied right of action under Section 14E for scienter. So if that's where you're coming from, then you should decide the case on the narrower ground. They had it under 14A or? And hold that 14, any implied right of action requires scienter. But as to Borak and the time, I'm sorry, Justice Kavanaugh. Keep going. As to Borak and the timing, again, this is the same argument that was rejected in Sandoval. In Sandoval, the argument was, well, wait a second. When Congress was debating Title VI, this Court decided Borak. So clearly, Congress had in mind Borak when it was passing Title VI, and that context has to inform our construction of Title VI and the regulations they're under. And this Court emphatically rejected that in Sandoval. This is the same. But Sandoval accepted the canon principle, right, which is that if Congress specifically takes language that's been held to create a private right of action and replicates that language, then that counts as a pretty strong indicator that Congress has meant for the same result to obtain. It mentioned that in the context of canon, but here's why that doesn't work here. And you refer to the text of Rule 10b, and I agree with you. Congress transplanted the text from Rule 10b into Section 14e. But the implied right of action to enforce Rule 10b-5 comes from Section 10b of the Securities Exchange Act, because as this Court said in Sandoval, regulations can't create implied rights of action, statutes do. When you look at Section 10b, it's completely different than Section 14e. So there's no basis to say, well, because Section 10b makes clear that it's even the statutory language in 10b makes clear that it's going to take its content from the rules and regulations that are designed to implement it. And then 10b-5 comes along and essentially gives 10b its content, and all of these rules are defined in that same way, whether it was right or wrong, and say private right of action follows from that, and then Congress replicates that language. Well, this Court, in 1971, which was after the time that Congress passed the Williams Act in Section 14e, finally acquiesced in recognizing an implied private right under Section 10b for Rule 10b-5 violations, and no one is disputing that here.  So that was the framework in the same way that that was the canon framework, is that Congress is looking at something, a particular set of words that has been found uniformly to create a private right of action, and then Congress writes those same words. Again, I would disagree with you, because the words that matter for purposes of an implied right of action under 10b are 10b, and those words are completely different than the words that Congress used in Section 14e.   Kagan. And that just seems incredibly artificial, Mr. Garre, because 10b-5 had been created, and everybody understood that 10b-5 was the governing standard and that private rights of action went along with that governing standard. Under – if that's true, it's under the Borak-type framework that courts would supply remedies when Congress didn't. But this Court was very clear about this in Sandoval, and I believe other cases where it said that regulations can't create implied private rights, statutes do. And this Court in Ernst & Ernst said that Section 10b was the source of the implied private right. So on Justice Kagan's questions, to pick up on those, in Sandoval, in distinguishing the prior cases, it said two of those involved Congress's enactment or reenactment of the verbatim statutory text that courts had previously interpreted to create a private right of action. Yes. Now, it sounds like the way you respond to that is to say statutory text as compared to regulatory text. That's the sort of distinction? Right. Because, I mean, in Title IX, I mean, the Court referred to Sandoval to canon. By the way, I understand Sandoval to be explaining canon, not necessarily to be, you know, expanding it. Well, that's the question of how we interpret that sentence in Sandoval. Right. And so – But if we interpret that sentence in Sandoval as setting a principle, which I – take your point on that, I understand that, but if we do, then your distinction of it is Right. This case would be an expansion of what the Court said in Sandoval because – But even though Rule 10b's substantive scope is defined in terms of regulations, by the terms of 10b itself? I would say it's a different statute. And this is important, because if you look at 14a and 14e, 14a gives the SEC authority to pass rules. The SEC has been very judicious in describing situations where there would be violations, very limited, and so they've established kind of a break on the sorts of things that can be violations. Can I – Yes. I'm going. Sorry. No, no, please. Can I get your broader argument about why this sentence in Sandoval? Because Sandoval, if you continue down to the end of that paragraph on canon, said context is relevant, but it's only relevant as it informs text. And there's nothing about the context of Borak or 14a that informs 14e, because 14e is written completely different than 14a. But I guess, don't you think that the point of Sandoval, and it should be the point of all our decisions, is, yes, we want to know what Congress was intending to do here, but we're not going to throw out the whole statutory interpretation toolbox except for the text, because sometimes context matters a great deal in understanding text. And what we really want to know is, what did those words mean when people enacted those words at that time? And for us to be able to answer that question, the statutory context is extremely important, isn't it? I think Sandoval answers that by saying statutory context informs – is relevant as it informs text. But I think the broader point here is that this Court has been made very clear that when it comes to recognizing implied private rights, this is a very special, perilous endeavor, and so there are very explicit limits on when the Court is going to do it. And it's not going to look at this question as it might any other routine statutory interpretation question. It's going to look first, are there rights creating language? Here, everybody agrees, not there. Second, is there any indication to believe that Congress intended a private remedy? And if you look at that question here, same answer, no. Congress clearly in the securities laws intended public enforcement. And so what are we left with? We're left with Borak, which is the heyday of this Court saying the courts have – not only can but have a duty to alert themselves to filling Congress's purposes and adapting remedial steps. Kagan because tell me if I'm misinterpreting what you're saying, but I had thought that the – that the line that Sandoval drew was, look, before now, what Congress did – excuse me, but the courts did was they just basically said, oh, look, if a – if a statute as broadly defined, then we should have a private right of action. And this Court said absolutely not to that endeavor, but – and said it has to be a question of statutory interpretation. What did Congress intend when it was passing that act? But you're suggesting something more. You're suggesting that the usual tools of statutory interpretation that we use sort of go out the window and there's a less context, you know, all of a sudden context doesn't matter, we just look mechanically at the words because this is such a fraught inquiry. Am I – am I reading you right? No. I mean, the tools of statutory construction are pertinent in answering the questions under this Court's decision in Sandoval. Is there rights creating language? Here everybody agrees that there's not. Is there a reason to believe that Congress otherwise intended a private remedy? No. And I would say here what's unprecedented about this case is that we're not aware of a single instance in which this Court has ever implied or recognized an implied right of action that the enforcement agency itself didn't recognize. And if you think of this in a steel seizure type framework, to the extent that this Court has authority to recognize implied private rights at all, then surely that authority is at its lowest ebb, where the government itself isn't arguing for that. I'm sorry, Justice Ginsburg. Ginsburg. Before your white line is on, I appreciate that, but you presented one question clearly, and that was Scientia v. Negligence, so I'd like you to tell me, do I understand you right to say not even the SEC would have a right to sue for negligence under 14e, not even the SEC? That's right, and we would point you to the Court's decision in Ernst & Ernst where the Court dealt with this question in the context of an implied private right and said that there was no basis for interpreting the similar language of Rule 10b-5 to confer negligence. And to your point, Justice Kagan, if you approach this case from the standpoint that Congress meant to lock in Rule 10b-5 when it used – when it transplanted language from 10b-5 in Section 14e, then you should at least reach the conclusion that the Ninth Circuit had no basis for inferring a private right of action for negligence. Breyer. I mean, sorry, because your time is – you're going to answer this when you get back up. I mean, look, the language of 14e that we're talking about is the same as the language of 10b-5, and 10b-5 copied its language from – what did you do? Section 17a. Yeah, 17a. Okay. So now, we use this language to get at proxy statements, don't we? And proxy statements can be ways of taking over a company. Well, proxy statements – So why would you want to have one set of language meaning negligence, where they try to take you over by proxy statements, but a difference – but exactly the same words, not negligence, when they try to take you over by a tender offer? Well, in here we're talking about the difference between Rule 10b-5 and Section 14e, and both, we would say, require Sinter. But what I would say is that when it comes into policies of negligence versus Sinter, there should be a real concern on the part of this Court that interpreting Section 14e to go all the way to negligence, which would be unprecedented in the 50-year history here, would result in the dumping of information, would ultimately be counterproductive. And I would ask this Court to reserve the remainder of my time. Thank you, counsel. Ms. Ratner. Mr. Chief Justice, and may it please the Court, Section 14e does cover negligent misrepresentations, but it does not authorize private enforcement. If we find a private cause of action, Mr. Garre says that you didn't answer that question in your brief. So assume we were to find an implied cause of action, would you still say it covers negligent? We think that the text is sufficiently clear that it covers negligent misrepresentations. The Court could, for policy-based reasons, restrict private rights of action. That's something the Commission has previously covered. Could you answer Justice Breyer's point, which is, I took his point to be that since 14e borrows the language of 10.5, and we have all along interpreted 10b.5 to require Sinter, why shouldn't we require the same standard here? I think that was his question of Mr. Garre, so that's my question to you. You're talking about it as policy. I'm talking about if we're going along the road of saying what does Congress intend, and you look at context and history, wouldn't you think they intended to take language that had already been interpreted in one way to mean just that in a different context? No, Justice Sotomayor. So the language, first of all, of 10b.5 had not already been interpreted that way. The Court's decision in Ernst and Ernst, which interpreted 10b.5, came after 14e was enacted. So we don't have that settled meaning at the time. And I think beyond that, just looking to the Ernst and Ernst decision, the Court could not have been clearer that the language of Rule 10b.5 itself would be appropriate to have a negligent standard, but there was a separate constraint of the language of section 10b. That separate constraint doesn't apply here, and that's why we think the better analog is section 17a, which the Court considered in Ernst and said negligence. Now, I do want to address the question whether there is a private right of action in the ---- Before we get to that, just one more question on the mens rea element. I understand that Ernst came later, but normally we do read the same language to mean the same thing. So I'd like you to address that problem. And then the second problem is, I understand the point about negligence being what we normally assume Congress to use when it's a civil matter. But the penalties here are pretty significant and available under this section. And it may be equivalent to and worse than a lot of criminal offenses. I'm sure a lot of people would rather be found guilty of a misdemeanor than this particular offense. So why wouldn't we use a higher mens rea, given that? So on your first question, the language can't always mean the same thing because we already have it meaning different things in 17a and Rule 10b-5. And the answer is why did it come out differently for those different provisions? Section 10b is separate language. So which is this more like? This is more like 17a. On your second point, Congress already accounted for the potential different mens rea standards in the tiered system of penalties here. So there are very low fines that the commission may seek for negligence. And those are increased as there is sienter found. So I do think Congress already considered this in the enforcement section. Turning to the private right of action issue, I want to address the question, Justice Kagan, Justice Kavanaugh, that you were discussing. We don't think that the fact that there was a private right of action under Rule 10b-5 is enough here. And there are really three reasons. The first is that the private right is located in Section 10b, not Rule 10b-5. And that's not just a formality. In this case, it's only Section 10b, like Section 14a, that actually has a textual hook for a private right of action. It's Section 10b that discusses for the protection of investors. And that's something that this Court noted in Borak was actually a reason for finding a private right there. Kagan. Kagan. I guess I understand the distinction as a distinction, but not why it matters. Because what we're trying to find out is what Congress was doing. And it seems to me that when you have 10b and it says the content of this is going to be done by rules and Congress enacts and the agency enacts 10b-5 and everybody knows that's the substantive standard. And then all these courts say that as to that substantive standard, 10b gives a private right of action. And then Congress comes back and recites the substantive standard. Doesn't Congress think that the private right of action go with it? You would have to be like a super duper super lawyer to say, well, it's a little bit different because the substantive standard is split up from the private right of action. There's just no reason why Congress would have thought that. Well, Justice Kagan, again, the question is not just what Congress expected as a matter of contemporary legal context. It's what it said. And it didn't pick up the words for the protection of investors that this court had identified in Borak as a reason for a private right of action. That's point number one. Point number two, what it did use here is common disclosure language that appears throughout the securities laws. It's not a case like Cannon where there actually was language directed to the victims. In that case, the statute was no person shall be discriminated against on the basis of sex. And that statute had been then interpreted to have a private right of action. It made more sense to say that that meaning was encompassed in those victim focused words. And then the third point is that this type of provision that involves misrepresentations and omissions of material fact appears, as I mentioned, at a number of places. And we know it often does not create a private right of action. It doesn't create a private right of action in section 17A of the Securities Act. It doesn't create a private right of action in section 206 of the Investment Advisors Act. That was this court's decision in Transamerica. So it's not like Congress picked up some sort of clear code word and incorporated it into section 14E. Absent that, the commission feels that the result is effectively dictated. Those decisions came after 1968. That's correct, but- That's the argument on the other side, right? That's correct, that they may not have been decided at the time. But I do think they illustrate that this isn't some sort of code word or some sort of term of art that carries with it a private right of action. Given- Could you explain why you think it's appropriate for us to reach the question whether there's a private right of action? If you were the respondent here, would you think that that claim was properly before us? Is that the precedent you want us to set? So we think as an ordinary matter, this Court does not consider questions that have been neither pressed nor passed upon. The reason why we think in this case it would be proper to consider is really a combination of three circumstances. The first, at this point, it's now been fully briefed and aired. The second is this really is an antecedent question to the scope of Section 14E. And then the third and most dispositive one is that in Central Bank, in identical circumstances, the Court found that it was appropriate to consider this question. So in light of that combination of those three circumstances- On your antecedent point, Schreiber did something similar, isn't that correct? So Schreiber did go on to consider the scope of Section 14E. We think first, the question whether there was a private right wasn't presented there, so it wasn't necessarily antecedent in that respect. And second, the scope question in that case was about whether 14E more or less has substantive fairness provisions, which wouldn't have been affected by the existence of a private right. I think here it's particularly correct to think of this as an antecedent question because most of petitioner's arguments for why there has to be a scienter standard turn on the existence of a private right of action. And so that's why we think that it's difficult in this case to go on and assess whether scienter or negligence is appropriate without addressing that antecedent question. That said, if the court thinks that this was both forfeited and it doesn't want to exercise its discretion, it could decide that negligence is the appropriate standard here. But only if it thinks that that is sufficiently clear from the text without regard to whether a private right of action exists. The right of action's been recognized in the lower courts for quite a while. Does the government think that's caused real world problems, recognizing the private right of action? We're not taking our position here as a basis of policy, either for or against the private right of action. True, but faced with a wall of lower court precedent that sometimes is considered as a factor in thinking about the state of the law. Yeah, I would note that- There are no real world problems, that is one thing. If there are some that the commission sees, then it's good to hear those. So first, we think the most obvious real world problem is the existence of a private right of action has led lower courts to create the scienter standard, which we don't think is the proper scope of the commission's enforcement authority. And I would just flag that as a general matter in the private rights context, it is a pretty common situation in Central Bank, in Sandoval, in Transamerica, that the lower courts are uniform in finding a private right of action that this Court then says doesn't exist because they've been following their earlier precedent. So I do recognize, given I believe Justice Ginsburg's question earlier, that this does create an anomaly between 14a and 14e in terms of their enforcement responsibility, but that's an anomaly as a result of Sandoval. Thank you, counsel. Mr. Geiser. Thank you, Mr. Chief Justice, and may it please the Court. Although we submit only one question as properly presented, this entire dispute can be resolved looking to this Court's usual tools of statutory construction and the text, context, purpose, and history of section 14e. As for the culpability standard, Santer is not required under the plain words that Congress chose for this statute or this Court's decisions concerning materially indistinguishable language in 17a in Arron and even in Ernst & Ernst itself, where it said that a standalone reading of Rule 10b-5 would in fact support a negligent standard. As for the private right of action, this case presents the exceptionally rare situation where Congress unmistakably intended this very statute to be privately enforceable despite not including an express private remedy. Well, we now know that that was not the right approach, right, in Borak? Well, Borak was not the right approach. Borak would not be decided the same way today. Borak may not be decided the same way today, but again, our position is not rooted in Borak at all. We agree that Sandoval rejected Borak's method and we're not trying to revive it. We're looking specifically at the usual tools of construction. And my friend suggested today he agrees that Congress – this was, I believe, a direct quote – Congress transplanted the text of Rule 10b-5 into Section 14e. That's indisputed in this case, and it's a traditional rule of construction that when Congress uses words that have a set of legal meaning. Right, right. But I mean, the Borak basis, in other words, from today's perspective, what we did back then was a mistake. And it's one thing to say, well, it's done, you know, don't necessarily overrule it just because you view it differently now. But there's certainly a strong argument could be made that you shouldn't repeat the mistake, you shouldn't carry it, you shouldn't expand it, even if you would have made that same decision back under the, I think as Justice Scalia called it, the ancien regime. Exactly. Your Honor, and if our position was that you should apply the exact Borak methodology because this falls in Section 14.2, then I would agree with you and we should lose. That is not our position at all. Our position is that if you look at Congress's intent, and as Cannon confirmed, the question is not whether Congress was correct, it's how did they perceive the state of the law at the time. But it wasn't the statute. It was the rule language, and, you know, this type of provision is used in multiple places where it's not been recognized to create a private right of action. So how do you respond to those arguments on the other side? So looking first to the fact that this came from a rule. I don't think that is a distinction without a difference. I don't know why that would matter. The question is, did that rule have a settled legal meaning at the time that Congress decided to use those exact words? And looking at this Court's decision in Herman and McLean, the Court said by 1969, 10 of the 11 courts of appeal said that Section 10b and Rule 10b-5 were privately enforceable. So Congress, understanding the existing state of law in 1968, that was within one year of the Williams Act passage, would have understood well that Rule 10b-5 was considered to be privately enforceable. But we usually look, to pick up on the Chief Justice's point, we look at the text of the statute these days. And if it's not a private cause of action, we're not overruling ones that recognize private rights of action before, but we're not expanding it either. The Central Bank makes that clear, and Sandoval and lots of other cases. We fully agree, Justice Kavanaugh. The question is, looking at the text of this statute, this is a traditional tool. There's no, just to state the obvious, there's no private right of action in the text. Exactly. And if you look at United States v. Kwai-Fung Wong, the Court was unanimous. There was no statement anywhere whether that particular language is jurisdictional or not. But as both Justice Alito's dissent and Justice Kagan's majority opinion confirmed, when Congress uses words that have been attributed as having jurisdictional significance, then Congress has understood to import that same significance, have the same meaning and the same effect in the new provision. But it's not just a question of Congress's words or even Congress's intent. It goes to the authority of the courts to engage in the sort of fundamental lawmaking enterprise that inferring a private cause of action involves. In other words, the reason we do it differently is not because we have any different view on the tools of congressional intent. It's because we have a different view on the appropriate limits on our authority. And I don't know why, if we exceeded those limits, you know, back in the battle days, why we should feel free to exceed those limits today. Mr. Chief Justice, I think exceeding the Court's limit is doing something Congress did not intend. The ultimate lodestar for Sandoval was what is the statutory intent. And I don't think that Sandoval said that you throw out all tools of construction unless it's a one-way ratchet and it says don't imply right of action. The question is, what did Congress intend when they used the specific language in 14e? And I don't think that is then necessarily the Court stepping in and saying, we think this is a good idea to advance the purpose of the statute, even though it's not what Congress had in mind. Our contention is that, given this highly unusual, and this is basically a perfect storm of factors that come together, that show that Congress in 1968 expected 14e and understood that it would be privately enforceable. And why didn't they do it then? I think for the same reason there that they in 14a, they didn't do it. And in some other statutes, as the Court has said, can be privately enforceable by implication. But they did do it with a number of provisions. So that shows they knew how to do it and they did do it. Back in 1933 and 1934. But and I think that if this So they forgot by 1968? No, Your Honor. It's actually, I think, if this statute were passed with the original 33 and 34 Act, I would submit we would probably lose this case. The reason that we win this case, I hope, is that by the time that Congress acted in 1968, it was using words that were understood to have a private right of action. That was the consequence of using that text. And again, this is cut from the same cloth that the Court uses for ordinary statutory interpretation all the time. What extent should we be, take cognizance of the possibility that a lot of lower courts, having created this private right of action, I don't mean to say that pejoratively, of course, then, in order to counter what they perceive as abuses, ratchet up the mens rea to scienter. We have some indication before us that a lot of these cases are filed, class actions, and then immediately dropped as soon as maybe the lawyers get their fees. And to maybe address that, some lower courts have heightened the scienter. So at the end of the day, are we really doing anybody any favor by creating a private right of action and then maybe increasing the scienter? Well, Justice Gorsuch, to be absolutely clear, the lower courts are not ratcheting up the mens rea to prevent abuse. The Court's statement, sorry, continue. I was just going to say, if you look at our brief in opposition, we went through the lower court cases and showed that these were cases that arose under the second clause of 14e and were premised not on negligence but on scienter-based allegations. And in response, my very able friend in his reply didn't take issue empirically with our description of those cases. He asserted the view that section 14e has a uniform culpability requirement, which, of course, is exactly what Aaron rejected. Scalia, you cited Aaron. You rely on that for the negligence standard. But there is no private right of action under 17a, is there? There is not, Justice Ginsburg. But to be very clear, at the time of the Williams Act in 1968, court said that 17a was privately enforceable. My friends haven't identified a single case until more than a decade after 1968, after 14e was enacted, where any court said it wasn't privately enforceable, which I think also goes back to your other question, Justice Kavanaugh. The whole thing is kind of a time travel argument. Oh, Congress would have thought in 1968 that courts create implied causes of action. That's rejected in Sandoval. And I think the patterned after argument, the precise, is really just a different form of that same argument, which is, well, Congress would have thought based on the state of the law. And that kind of general point was rejected in Sandoval, at least as I see it. I want to be extremely clear about this, because I think it's very important. We are not making the time travel argument. We're not making the contemporary legal context argument. The patterned after argument is that. No, the patterned after argument is very different. It is very different to say why isn't, tell me why it's not a subcategory of the larger time travel argument. The time travel argument says that we have lots of statutes that were passed during the bad old heyday of the implied rights jurisprudence. And so we assume that Congress knew that they could just say whatever they wanted. Courts would take all of these statutes and somehow on their own differentiate between ones that really deserved a private right and ones that didn't. That is not our argument. Our argument is that looking to the specifics of Section 14e, the text that Congress used, the context in which they used it, the entire point was to harmonize 14e with 14a. Now, maybe Borak was wrongly decided, but when Congress acted in 1968, they knew that 14a was privately enforceable. And we still haven't heard a single reason that any rational legislative body would expect 14a for proxy solicitations to be privately enforceable, but 14e not. Kagan. So in your perfect storm, Mr. Geyser, you have the 14e, 14a analogy, you have the replication of 10b-5 language. Is there anything else that goes into creating this perfect storm? I think there is, Justice Kagan, and there's actually 50 years of it. There's 50 years of unbroken precedent among the lower courts, including a decision in 1985 by this Court in Triber where the Court adjudicated a private right of action and a dispute over the elements of that private right of action without so much as hinting that it wasn't privately enforceable. I don't think the Court overlooked that. The Court cited Piper three times where the issue had been previously reserved. Well, but the lower courts, it seems to me, is readily explainable by the fact that they were following what we had said, and then were to so categorically reject later in the subsequent right of action cases. Well, Mr. Chief Justice, that didn't happen in the context of 17a, where courts used to say, employing the Borak methodology, that this is privately enforceable, and they said, uh-oh, under Sandoval, now it's not. But 14e stands on entirely different footing because of the text use, and it's not just the 50-year history. Congress has amended the ---- This is all true in Central Bank as well. Every court of appeals, every single one, had rejected, had allowed aiding and abetting liability, and the Court said, no, it's not in the text, and rejected the acquiescence argument as well. And, Justice Kavanaugh, if that's all we had, we'd probably lose this case. But our point is that's not all we have. Central Bank did not have Congress importing the verbatim text from an earlier provision that was well understood at the time to be privately enforceable. And Central Bank didn't have what would be an incredible anomaly in the securities laws where Congress is trying to harmonize 14a and 14e, and would do that by creating this stark discontinuity where one's privately enforceable and the other isn't. That was the primary means of enforcing these provisions at that time. So it would make very little sense that Congress would do that with no indication. But to go back, Congress has since amended the securities laws in three times since 14e's enactment, touching directly on this subject matter. It did it the first time in 1970, where it added the second sentence of the statute. At that time, there were already two courts of appeals, including an opinion in the Second Circuit by Judge Friendly, saying it was privately enforceable. Congress did not repudiate those decisions. Well, the Judge Friendly opinion was relied on by a dissent in the subsequent case, rejecting that approach. Well, again, the question is what But again, we're focusing on what Congress was thinking when they were looking at how the courts had treated these statutes. In 1970, if Congress thought, wait a minute, we didn't want this to be privately enforceable, presumably when you have an opinion as prominent as one by Judge Friendly, they would have said something. But even without that, we have the 1988 amendment where Congress added an express right of action. But in Piper, I'm just not going to let that go for respectfully, but Piper rejected that reasoning from the Judge Friendly opinion. Justice Stevens' dissent relied on it, so that was rejected, that mode of analysis. Well, to be very clear, though, there were two issues in Piper. One was decided, one was reserved. The issue that was decided is whether a tender offeror has a private right of action. And the Court's logic was that they don't because they weren't the class that Congress had in mind and was trying to protect. And in reserving the question, they didn't reserve it in a way of we have doubts about this. They said the dissent is accusing the majority of undermining the statutory objective because this would leave the statute not capable of private enforcement by that protected class. And the majority batted it out of hand by saying we're not deciding that question. That only makes sense if the Court assumed that those shareholders would have a private right of action. But even without that, if you go to 1988 when Congress added the express right of action for insider trading. Can I stop you right there? The Court left open the question where it's you're saying they assumed the answer? I'm saying that their response to the dissent's accusation that they were undermining the practical enforcement of the statute makes very little sense unless they thought that it would be privately enforceable. But again, we don't even need that. When you fast forward to 1985 in Schreiber, at that point, this is apparently such a settled question, the Court doesn't even flag for the lower courts. Don't misread our opinion and think that we're embracing this right of action. There's not a hint of that. And it's presumably because at that point it was so well settled that this was privately enforceable, the Court didn't even think it was worth mentioning. But then in 1988, only three years after Schreiber, again, Congress created an express prohibition on insider trading. And in the key congressional report, they said that this insider trading prohibition overlaps with existing rights under the securities laws and the cases construing them, and it flags Section 14e precisely. And then Congress had an express reservation saying that this new express remedy is not meant to take out any implied private rights under the Act. So Congress understood at the time that people were suing under Section 14e, it was And they preserved those causes of action. And then if you fast-forward to the PSLRA in 1995. They said it wasn't supposed to be read in either direction, correct? That was the no Justice Kavanaugh. In 1988, they said that we are preserving the implied rights. I take that as a one-way in our favor. Now, in the PSLRA in 1995, Congress went ahead and they didn't just add pleading standards, that's a very general thing to all the private rights. But if you look to the forward-looking statement Safe Harbor, and I think this is really critical, in the forward-looking statement Safe Harbor, they said that certain statements, now, if they're forward-looking, will not be actionable in private rights under this chapter based on untrue statements and material omissions. And they excluded from that Safe Harbor statements made in connection with a tender offer. That is the exact subject matter of Section 14e, and as far as I know, it is only the subject matter of 14e. So Congress not only said that these are private rights that are premised on untrue statements and material omissions in connection with a tender offer, but they said these get a leg up. These aren't even – these won't even fall within the Safe Harbor for forward-looking statements. So if you do a forward-looking statement in the context of 14e, those actions are still preserved. So I think we have 50 years of unbroken precedent, and we have the Petitioners raising an issue that they expressly conceded below, which I do think distinguishes us from Central Bank. Sotomayor, Well, they had no choice in the Ninth Circuit, right? No, Mr. Chief Justice. I'm not aware of any Ninth Circuit decision that looked at whether this is privately enforceable under the Court's modern scheme. I submit if the Ninth Circuit had done that, they would be making the points that we made today, and I believe they'd reach the same result. But that is an issue that's open to my friends in the Ninth Circuit. And they did not say we're bound by circuit authority. They didn't drop a footnote saying we plan to challenge this for further review. They waited until rehearing where they made a point that did not cite a single one of this Court's recent authorities, didn't say that it's been undercut, didn't suggest that the Ninth Circuit. Circuit authority is binding until it's overturned, right? I'm sorry? Circuit authority is binding until it's overturned. Just because there's an intervening – there are a lot of intervening decisions from this Court and lots of others, it doesn't render a circuit authority ineffectual. Well, no, actually, in the Ninth Circuit, and the Ninth Circuit has a very aggressive rule on this, is that if there is intervening Supreme Court authority that takes the legs out from under a case. Sure, but it has to be argued and it has to be so held. It doesn't happen deus ex machina. Well, but my very point – that's exactly my point, though. There is absolutely nothing that stopped Petitioners from arguing that. They could have argued it, fair, I understand that point. But to say that there was no precedent on this point would be incorrect, too. Then I misspoke. No, there was precedent on this point. My point is that there was nothing that prevented the Petitioners, even at the panel stage, from raising this argument. What about Central Bank? I mean, one response could be, don't repeat that. Again, but do you have any other response to their raising of Central Bank? Well, I think that – I think the primary response you've already said as well as – or better than I could. I don't think just the fact that the Court can do something means that it's a prudent exercise of its power, especially in a context where you have 50 years of unbroken authority and three amendments where Congress decided not to disturb that authority. Well, in terms of the prudential approach, though, the consequence of this is going to be, with respect to the private right of action, setting the standard for that, a bit of a waste of time. We're sort of figuring out what's going to happen in an area where the argument has been made. You don't – you're not going to be able to – that's not going to make a difference because there's no private right of action in the first place. Well, I do think, Mr. Chief Justice, in Shriver, let's say you think this isn't privately enforceable. Deciding that this is a negligence standard still has effect because the SEC can still bring those actions. But again –  Sure, I understand that. But I mean, the authority of the SEC and private litigants are two different – Well, they are. And we pointed out in our brief in opposition that this wasn't a good vehicle to take if the Petitioners are really genuinely serious that this private right that's existed for half a century suddenly doesn't exist, when they can't cite a single case that actually holds that. And as a matter of simple prudence, I think it would make far more sense for the Court to flag that this is an open question or something these courts might think about. Again, we don't even think it's open, given this incredible, perfect storm of congressional indicia saying that this is privately enforceable. And then at least there would be some percolation where litigants can see how do these arguments actually pan out. Instead, this Court would be the very first court to grapple with all of these arguments based on the borrowed text from Rule 10b-5, based on the history of this provision, explaining is there really any basis for thinking that Congress wanted this puzzling anomaly in the security scheme. Ginsburg-Your answer to Central Bank is just that it was wrong, we shouldn't do it again. Is that it? Burschel, Well, it's that, and I think we have one distinguishing feature, and I hope I'm not misstating the lower proceedings in Central Bank. I don't believe that the litigants in Central Bank had actually conceded the point the way that Petitioners conceded the issue here. And it wasn't just a concession here that we're bound by 14e, it was a point saying that 14e is privately enforceable, so the Ninth Circuit should hold that 14b-4 is not. So it was actually an affirmative point trying to gain an advantage on a different issue that was presented below and is not before this Court. So I think, given, again, this perfect storm, this is not the camel's, you know, nose under the tent where we're trying to undo Sandoval. All we're saying is don't read Sandoval the way that my friend is inviting the Court to, which is this mechanical, after-the-fact magic words requirement. That's a caricature of what Sandoval actually held. Sandoval is saying look to Congress's intent. Use the usual statutory toolbox and try to figure out what did Congress mean. And looking to borrow text that has settled meaning, that has settled meaning has settled meaning. Roberts. Do you think that if Congress's usual tools of congressional intent were set forth today and we'd say, well, if we apply those usual tools, we think Congress intended there to be a private action, but they didn't say that, you think we might, even in that situation, say, well, we think there's a private right of action because Congress wanted to leave it to us to make that decision? I think that today this would be a far harder case for us and one we'd probably lose. But to be absolutely clear, we still would have pretty good arguments because Congress would still be modeling the new statute after an old statute in the model of Canon and under a rule that I think Sandoval supported. Sandoval did not say that Canon was wrongly decided. It didn't repudiate its analysis. It would require a little bit more. Roberts Well, I'm trying to remember exactly which part of it. I'm sorry. Roberts Well, the fact that it was more specific in terms of rights-creating obligation than the statute here. In other words, Canon is not just an absolute rule while you look at the chronological context, but there were distinctions in Canon that aren't present here. I don't think those distinctions drove the analysis in Canon. Canon did not say because there's this hint of right-creating language, therefore it's privately enforceable. It predominantly looked to say that Title IX was modeled after Title VI. Congress knew that Title VI was privately enforceable, therefore it would have understood the same language would have the same effect. There's no reason to look at it any differently. That's exactly what we have here. Kagan And that's the way Sandoval looked at Canon, isn't that right? Roberts Exactly. And so Sandoval, so I appreciate my friend's attempt to create some distinction, but I just don't see how that actually works in the government's favor. I'd also like to point out that in terms of my friend's argument that if you are to recognize a private right of action, it should be one only for scienter, because that's what courts have been saying for 50 years. I don't think that that is a faithful construction of the statutory text or the way that this Court deals with implied rights that are recognized. The ultimate touchstone is still Congress's intent, and Congress's intent, if you look at the text of this statute, is incompatible with the scienter requirement but perfectly consistent with the negligence requirement. And I think that Congress in 1968, looking at this language, would have known at the time that there was a circuit split over whether Rule 10b-5 was actionable under a negligence theory or a scienter theory. And they would have looked at the language of the text and have seen there is absolutely no hint in this of a scienter requirement. In terms of prescribing the behavior that you're concerned about, do you think it would be fair to say that there is a different culpability standard for a private right? And how would you assess SEC enforcement alone of a negligence standard versus SEC plus private enforcement of a higher mens rea standard? I realize that's speculation, but I'm just curious to your thoughts on that. I don't think the – well, I have a few thoughts, Justice Kavanaugh. One is that I don't see a textual hook in the statute for saying that there is a different culpability standard, depending on whether it's the government as a plaintiff or a private right. I was asking a different question. In other words, the level for the people who are regulated, if they know they're on the hook, at least the SEC, for negligence, okay, that's going to scare them into certain protections, versus if the standard's higher, so they're not going to be on the hook for just negligence, but they could be enforced – again, it could be enforced by both the SEC and private. Which do you think has a greater enforcement effect? And I realize it's speculation, but just your experience, so I'm curious to your thoughts. I think it is very difficult to predict, other than knowing that the SEC, with their limited resources, as they made – as they made the point in the Piper amicus brief, and I realize some decades have gone by, but I don't think the SEC's – the constraints on their resources have changed much. I think that someone looking, knowing that they only face government enforcement, is very unlikely to be as concerned about honoring the full and fair disclosure. Are you sure about that? I mean, that seems – I'm not, because I don't – I'm trying to predict that. Seems like someone faced with the SEC enforcing a negligence standard is going to be very concerned about their actions. If, in fact, the SEC has the resources available to go after that. Well, they must think they do, right, because they say there is no private right of action. Well, they do, Your Honor, but I took their brief on that point to be – to be fairly understated. They stress the importance of the private right under 14a, and the 14a context is absolutely indistinguishable from the 14e context from a practical standpoint. And they simply said our hands are tied by Sandoval based on what we say is a demonstrable misreading of Sandoval. So I don't think that's the case. This Court, Mr. Geiser, has sometimes indicated real concern with abuse of private suits, and particularly with the opportunity for strike litigation. What's the – do you have an answer to that? I do, Your Honor. May I? Sure. Thank you. The answer is that Congress has calibrated specific remedies that are actually a linear response to the abuse, as opposed to saying let's throw the baby out with the bathwater and just either ratchet up a mens rea requirement that's profoundly atextual, or say a private right of action doesn't exist. The PSLRA cuts off discovery until the motion dismissed has been resolved. There are heightened pleading standards, and it says that there's a mandatory sanctions regime if you file a baseless lawsuit. There's absolutely no reason that any defendant faced with a frivolous lawsuit can't defend themselves just as ably as they can settle. And if they do defend themselves, they'll get attorney's fees, and they should if the case is in fact baseless. Thank you, counsel. Three minutes, Mr. Garre. Thank you, Mr. Chief Justice. Fundamentally, the threshold question in this case is about the role of Federal courts when it comes to creating implied private rights. This Court in Sandoval charted a completely different course than the Court had previously taken, and there's absolutely no reason for this Court to abandon or backtrack in any way on that course. I've heard no answer from my friend today as to how Section 14e actually satisfies the test set forth in Sandoval for creating implied private rights. Instead, all we've heard is arguments for eroding Sandoval based on context, time travel, congressional silence. There's no reason for this Court to cut back in Sandoval and create new exceptions that are going to lead to grandfathering private rights recognized under the old regime. If this Court does adopt the premise that because Congress adopted the regulatory language in Rule 10b-5 and 14e, then that has to lead you to the conclusion that Congress intended Rule 10b-5's scienter requirement. So that doesn't help my friend either. And, Justice Breyer, I would add, with respect to 14a, 14a, this Court has never recognized a negligence standard for 14a. The lower courts are divided on that. The Adams case of the Sixth Circuit says it's a scienter standard. So our view is that should be a scienter standard as well. Finally, with respect to the issue of waiver, Central Bank resolves that issue as a matter of precedent. We are in a much stronger position in Central Bank in that we indisputably briefed it at the cert stage. We raised it in our panel hearing. We didn't concede the issue below. We simply acknowledged circuit precedent and did not dispute it. Breyer. I'm rather curious. You may know the answer to this. What do I look at? I'm curious how many proxy solicitations each year there are in the United States. I'm curious to know how many tender offers there are in the United States. You can tell me? I can tell you. Good. From 2013 to 2015, there were 725 transactions involving U.S. public companies. 118 used tender offers. 507 used proxy solicitations. And, of course, 14a isn't just limited to proxy solicitations used for acquiring companies. It's proxy solicitations generally. So how many of those do you think there are? So our understanding is that they are thousands or what? Just proxy solicitations? Yes. It's broader because I don't have statistics on that. Do you have a guess? I don't. I won't hold you to it. I'm not going to guess. It's broader. It's more than 725. Obviously, my question is related to staff. Yes. I mean, it's one thing if it's tens of thousands, which suddenly you're going to ask the SEC to go and look at, or whether you're talking about 50 in which case. I guess they could do it. They say they can do it on this one if we keep it to tender offers. I don't know what happens if it expands to proxies and other things. No one has questioned the existing regime under 14a. The only question is whether this Court is going to create a new regime under 14e. Thank you, Your Honors. Thank you, counsel. The case is submitted.